IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GENICA R. WATSON, )
    Plaintiff, )
v. )
)   Case No.
CITY OF ST. LOUIS, MISSOURI, )
    Defendant. )
)

# *COMPLAINT*

COMES NOW Plaintiff Genica R. Watson ("Plaintiff") and for her Complaint against Defendant City of St. Louis, Missouri ("Defendant") states as follows:

**Parties and Jurisdiction**

1. At all times relevant herein, Plaintiff is and was a citizen of the United States of Missouri and resident of the City of St. Louis, Missouri.

2. At all times relevant herein, Defendant is and was a political subdivision of the State of Missouri.

3. At all times relevant herein, Defendant operated the City of St. Louis Street Department and Refuse Division.

4. At all times relevant herein, Plaintiff is and was employed by Defendant as a Utility Worker in the Refuse Division.

5. Jurisdiction in this Court is proper pursuant to 42 U.S.C. §2000e-5(f)(3).

1

6. Venue in this Court is proper in that the acts and occurrences giving rise to Plaintiff's cause of action occurred in the City of St. Louis, Missouri within the Eastern Division of this Court.

7. At all times relevant herein, Defendant was acting through its designated supervisory agents, officers, employees and representatives who were acting within the course and scope of their employment and authority with full knowledge that Plaintiff's statutory rights were being violated by its employees and agents.

8. On or about July 12, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission under Charge Number 560-2023-02438 which is attached hereto as Exhibit 1.

9. On August 8, 2024, the US Department of Justice, Civil Rights Division, issued Plaintiff a Right to Sue Letter which is attached hereto as Exhibit 2.

### Facts Common to All Counts

10. Plaintiff is an African American woman.

11. On or about April 3, 2023, while Plaintiff was working as a Utility Worker in the Refuse Division, Plaintiff's co-worker, a Caucasian Utility Worker, called Plaintiff a derogatory racial slur.

12. Plaintiff submitted a complaint to the Commissioner of the Refuse Division reporting that she had been called a derogatory racial slur by her co-worker.

13. Following this April 3, 2023 incident and Plaintiff's complaint regarding same, the following occurred:

    a. a picture of a face with the word "devil" and a picture of a stick figure of a woman with a noose around the neck were drawn in the dirt on the work truck Plaintiff to which Plaintiff was assigned;

    b. Plaintiff found a dent, which looked like it was made by the work forklift, in the door of her personal vehicle while it was parked in the employee parking lot;

    c. On multiple occasions when Plaintiff attempted to load and unload her work truck, she would find the loading area was blocked by a front loader;

    d. Plaintiff was then given a designated spot to load and unload her work truck; however she would arrive to find trash having been piled in her designated area;

    e. Plaintiff was then moved to a separate work area in a completely different building;

    f. After Plaintiff was moved to a separate work area in a different building, she arrived one morning to find that someone had urinated in her work area;

    g. On another morning, Plaintiff arrived to work to find items that had been cleared from a homeless encampment piled in her work area; and

    h. A rumor began circulating in the workplace that Plaintiff was having an affair with her Foreman.

14. Plaintiff submitted complaints to her Foreman regarding each of the incidents described in Paragraph 13, above.

15. When Plaintiff attempted to speak with her Foreman and Supervisor about the rumor that was circulating about her having an affair with her Foreman, Plaintiff's Foreman made a vulgar sexual remark, and Plaintiff's Supervisor then physically pushed Plaintiff out of his office, called her insubordinate, and said she was upsetting her Foreman.

16. On May 20, 2023, while Plaintiff was operating her work truck, Plaintiff's Supervisor followed her in his personal vehicle.

17. Plaintiff submitted a complaint to the Commissioner of the Refuse Division about her Supervisor following her in his personal vehicle on May 20, 2023.

18. On Thursday, May 25, 2023, Plaintiff left the Refuse Division in her assigned work vehicle to do her route.

19. Plaintiff then was called by her Foreman to return to the office.

20. When Plaintiff returned to the office, she saw that there were several police cars in the parking lot.

21. When Plaintiff pulled into the garage area of the building, police officers approached her work truck, and Plaintiff was placed in handcuffs.

22. Present in the garage area at this time were the co-worker that called Plaintiff the derogatory racial slur on April 3, 2023, Plaintiff's Foreman, and Plaintiff's Supervisor, all of whom are Caucasian men.

23. The police officer who handcuffed Plaintiff told Plaintiff that the co-worker reported that Plaintiff attempted to "mow him down" in the work truck in the parking lot and that Plaintiff's Supervisor was a witness.

24. Plaintiff explained to the police officer that handcuffed her that she had previously made a complaint against the co-worker and that an investigation was pending.

25. Plaintiff also explained to the police officer that handcuffed her that she had not been in her work truck at the time when she allegedly tried to "mow him down" and provided the police officer with the contact information for her work partner who could confirm that she was not using the work truck at that time.

26. The police officer spoke with the witness Plaintiff provided and then released Plaintiff.

27. After Plaintiff was released by the police officer, Plaintiff called the Director of the Refuse Division and explained to her what happened when she arrived at the garage.

28. The Director of the Refuse Division told Plaintiff that the co-worker who called Plaintiff a derogatory racial slur had reported that Plaintiff "tried to mow him down" and that the Director of the Refuse Division had told him to call the police.

29. The Director of the Refuse Division instructed Plaintiff to go to the office of the Commissioner of the Refuse Division and wait for her because she was concerned for Plaintiff's safety.

30. The Director of the Refuse Division then arrived and told Plaintiff to go home for the day and that she would be placed on administrative leave for her safety pending investigation.

31. The following Tuesday, the Director of the Refuse Division called Plaintiff and told her to return to work.

32. The day after Plaintiff returned to work, she was assigned a new work partner and told by her Supervisor that she would be training the new work partner.

33. Plaintiff's new work partner told Plaintiff that she was going to be taking over Plaintiff's job.

34. Plaintiff reported this comment by her new work partner to her Foreman.

35. Plaintiff and her new work partner were then instructed to go speak to the Commissioner of the Refuse Division.

36. However, when they went to the Commissioner's office, the Commissioner only had Plaintiff come into his office.

37. The Commissioner told Plaintiff he "was sick of it," which Plaintiff understood to mean that he was sick of Plaintiff and her complaints.

38. Plaintiff's Foreman then told Plaintiff to finish the route by herself.

39. The next morning, when Plaintiff arrived for work, her Supervisor told her she was being transferred to another location.

40. At Plaintiff's original work location, her job duties included preparing trash carts and delivering or replacing them.

41. At the location to which Plaintiff was transferred, she was assigned different job duties which consisted of working in the garage where the mechanics worked sweeping and hosing down the wash bay, cleaning out the mess from the trash trucks, lubing the trash trucks with oil, washing the trash trucks, walking around the outside yard picking up trash, and cleaning bathrooms and toilets.

42. Plaintiff's job duties at the new location were janitorial and mechanical in nature and were more physically difficult than her original job duties.

43. Plaintiff complained to the Superintendent of the Refuse Division and the Director of the Refuse Division about her transfer to the new location and new job duties and stated to them that she did not understand why she was the one transferred when she was the one who had made complaints of discrimination.

44. The Superintendent of the Refuse Division and the Director of the Refuse Division told Plaintiff that the transfer had been for her own safety.

45. However, the same people about whom Plaintiff had complained continually came to Plaintiff's new work location and continued to harass Plaintiff, including walking through trash Plaintiff had just swept, watching her work, and smiling at her in a demeaning way.

46. Plaintiff sustained an on-the-job injury while attempting to perform her job duties at the new location, which resulted in her being placed on light duty with reduced pay.

47. No action was taken against the co-worker that called Plaintiff a derogatory racial slur or against any other employees involved in the incidents described in the preceding paragraphs.

### Count I
### *Discrimination on the Basis of Race in Violation of Title VII*

48. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

7

49. At all times relevant hereto, Plaintiff was performing her job duties in a manner consistent with Defendant's policies, procedures, and expectations.

50. Plaintiff, as an African American woman, is in a class protected from discrimination under Title VII.

51. All aforementioned actions against Plaintiff, by order or under the authority of Defendant's employees and supervisors, herein mentioned, qualify as adverse employment actions taken in violation of Title VII.

52. The aforementioned adverse actions taken against Plaintiff were part of a pattern, practice, and policy of Defendant.

53. Plaintiff was treated differently than similarly situated Caucasian employees.

54. Defendant's conduct, by and through its employees and supervisors, was intentional, knowing, malicious, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of Title VII.

55. As a direct result of Defendant's unlawful acts, as aforesaid, in violation of Title VII, Plaintiff has lost wages and benefits of employment and has suffered emotional distress.

56. Plaintiff's race was a motivating factor in Defendant's decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendant as follows:

    A. Award Plaintiff actual damages including back-pay and compensatory damages for Defendant's violations of Title VII, including an amount

      equal to her lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits;

  B. Award Plaintiff damages for garden variety emotional distress;

  C. Award Plaintiff punitive damages for Defendant's intentional and malicious violation of Plaintiff's rights;

  D. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

  E. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

## *Count II*
### *Retaliation for Reporting Acts of Discrimination in Violation of Title VII*

57. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if fully set forth herein.

58. At all times relevant hereto, Plaintiff was performing her job duties in a matter consistent with Defendant's policies, procedures, and expectations.

59. All aforementioned actions against Plaintiff, by order or under the authority of Defendant's employees and supervisors, qualify as adverse employment actions taken in violation of Title VII.

60. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of Defendant.

61. Defendant's alleged reasons given for the adverse employment actions taken against Plaintiff are pretextual, given the proximity of the of the adverse employment

actions and Plaintiff's complaints regarding discrimination that she was being subjected to by Defendant's employees and supervisory employees.

62. Defendant's conduct, by and through its employees and supervisors, was intentional, knowing, malicious, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of Title VII.

63. As a direct result of Defendant's unlawful acts, as aforesaid, in violation of Title VII, Plaintiff has lost wages and benefits of employment and has suffered emotional distress.

64. Plaintiff's race was a motivating factor in Defendant's decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendant as follows:

      A. Award Plaintiff actual damages including back-pay and compensatory damages for Defendant's violations of Title VII, including an amount equal to her lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits;

      B. Award Plaintiff damages for garden variety emotional distress;

      C. Award Plaintiff punitive damages for Defendant's intentional and malicious violation of Plaintiff's rights;

      D. Award Plaintiff reasonable attorney's fees and costs incurred herein; and

E. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

/s/   Nicole   Harris
Nicole Harris   #51080
NICOLE HARRIS, LLC
Attorney for Plaintiff
500 N. Skinker Blvd.
St. Louis, Missouri  63130
(314) 496-1872 (phone)
(314) 480-7230 (fax)
Email:  nicole@nicoleharrislaw.com